IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ESTEFANY MARTINEZ,**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**AMAZON.COM SERVICES, LLC,**<br><br>　　　　**Defendant.** | **Case No.** _____ |

### DEFENDANT'S NOTICE OF REMOVAL

Defendant Amazon.com Services LLC ("Defendant") (misidentified in the Complaint as Amazon.com Services, LLC), by and through undersigned counsel, hereby gives notice that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, this action is removed from the Circuit Court for Baltimore City, Maryland to the United States District Court for the District of Maryland. As the basis for removal, Defendant states as follows:

**I.    THE STATE COURT CASE**

1.    On January 31, 2022, Plaintiff Estefany Martinez served on Defendant her Class Action Complaint and Jury Demand (the "Complaint"), which was filed on December 2, 2021, in the Circuit Court at Baltimore City, Maryland, Case No. 24-C-21-005414 OC.[1] True and correct copies of the Complaint, Writ of Summons, Affidavit of Service, and Civil – Non-Domestic Case Information Report are attached hereto respectively as **Exhibit A1-A4**.

2.    Defendant has not been served with any other process, pleadings, or orders. Accordingly, **Exhibit A1-A4** constitutes all processes and pleadings in this action and satisfy the

---

[1] Defendant does not concede, and in fact, reserves the right to contest Plaintiff's allegations that this lawsuit properly can proceed as a class action.

requirements of 28 U.S.C. § 1446(a).

3. In the Complaint, Plaintiff claims that she was employed by Defendant at a fulfillment center located at 2010 Broening Highway, Baltimore, Maryland 21224. **Exhibit A1**, Complaint, ¶¶ 1, 13.

4. Plaintiff alleges that Defendant operates "'fulfillment centers' throughout Maryland[,]" employing "at least several thousand individuals …" **Exhibit A1**, Complaint, ¶¶ 11,12, 20. Plaintiff further contends that, "[a]t the end of each workday, from the beginning of the applicable statutory time periods until at least spring of 2020 …" Defendant required Plaintiff and its non-managerial warehouse employees working in the state of Maryland to go through security screenings. *See id*. at ¶¶ 2, 15. Plaintiff alleges Defendant did not provide "any compensation for the time associated with these mandatory security screenings … for example, time spent waiting in security lines and going through the security screening process." *See id*. at ¶ 16. Plaintiff claims that Defendant's alleged actions violate the Maryland Wage and Hour Law ("MWHL") and the Maryland Wage Payment Collections Law ("MWPCL"). *See id*., ¶ 2.

5. Plaintiff further claims that "[t]hese daily security screenings took on average approximately fifteen minutes each day to complete, but Amazon did not compensate those non-managerial warehouse employees for the time it took to complete these daily security screenings." *Id*. at ¶ 2.

6. The Complaint seeks the following types of recovery: (a) "wages owed at both the regular rate of pay and overtime rate owed at time-and-a-half the regular rate"; (b) "actual damages, interest, and statutory damages" under the MWPCL and the MWHL; (c) "treble damages… under § 3-507.2"; (d) "damages, restitution, and other relief for herself and the proposed class"; (e) "attorneys' fees, costs, and expenses incurred in prosecuting this action"; and

(f) "such other and further relief as in law and justice [Plaintiff and the Class] may be entitled to receive." **Exhibit A1**, Complaint, ¶¶ 3, 28, 30, pp. 8-10.

7. The Complaint does not explicitly set forth the applicable relevant time period, but pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5-101 and Maryland common law, the limitations period is three years for each count, i.e., from December 2, 2018 to the present. Notably, Plaintiff alleges that she, along with the class, were subject to mandatory security screenings "until at least the spring of 2020 …" **Exhibit A1**, Complaint, ¶¶ 2, 15.

## II.   REMOVAL IS TIMELY

8. Defendant has timely filed this Notice of Removal pursuant to 28 U.S.C. § 1446(b)(1), which provides that a notice of removal of a civil action shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

9. As noted above, Defendant was served with the Summons and Complaint on January 31, 2022.[2] *See* **Exhibit A3** (including Affidavit of Service) and **Exhibit B**, January 31, 2022, Email Regarding Service of Complaint and Writ of Summons. Defendant is timely filing this Notice of Removal on or before March 2, 2022.

10. No previous Notice of Removal has been filed with this Court for the relief sought herein.

## III.   GROUNDS FOR REMOVAL

11. This action is removable pursuant to 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original

---

[2]  By agreement of the parties, on January 31, 2022, Counsel for Defendant accepted service (by email) of the Complaint, Writ of Summons, and Civil – Non-Domestic Case Information Report attached hereto as **Exhibit A1, A2, and A4** respectively.

jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

12. This Court's subject matter jurisdiction, and the basis for removal, is founded upon 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

### IV. BASIS FOR ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA

13. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), as codified in relevant part in 28 U.S.C. 1332(d)(2).

14. CAFA allows for federal subject matter jurisdiction over any civil class actions in which: (a) any member of a class of plaintiffs is a citizen of a State different from any defendant; (b) the aggregate number of putative class members in all proposed plaintiff classes is at least 100; and (c) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2)(A) and 1332(d)(5).

15. To be clear, Defendant denies Plaintiff's claims and allegations in the Complaint, the legal theories upon which they are purportedly based, her request for monetary and other relief, and any notion that this case may proceed as a class action. However, all requirements for jurisdiction under CAFA have been met, as explained below. As such, this Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1332(d)(2).

#### A. Diversity Exists Between Plaintiff and Defendant

16. Under CAFA, diversity is established for purposes of removal where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

17. The Complaint alleges that Plaintiff resides in Essex, Maryland, and that she worked for Defendant as a Packager at Defendant's "fulfillment center at 2010 Broening Highway,

4

Baltimore, MD 21224" from approximately the fall of 2017 until approximately November 2021. *See* **Exhibit A1**, Complaint, ¶¶ 4, 13. Therefore, Plaintiff is a citizen of Maryland.

18. Pursuant to 28 U.S.C. §§ 1332(c) and 1332(d)(10), a corporation or unincorporated association is deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is incorporated or organized. Thus, for purposes of a CAFA removal, a limited liability company's citizenship is treated in the same manner as a corporation's citizenship under traditional diversity standards.

19. To determine a corporation's principal place of business, courts apply the "nerve center test," which deems the principal place of business to be the state where a corporation's officers "direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). In practice, the principal place of business is "where the corporation maintains its headquarters." *Id.* at 92-93. In other words, Defendant's principal place of business is where its officers direct, control, and coordinate its activities. *Id*.

20. The Complaint alleges that Defendant is a Delaware corporation with its principal office in Seattle, Washington. **Exhibit A1**, Complaint ¶ 6. Defendant acknowledges that it is a limited liability company (though not a corporation) organized and existing under the laws of the State of Delaware. It is headquartered in Seattle, Washington, where it has its principal place of business. *See* **Exhibit C**, Declaration of Zane Brown, ¶ 2.

21. Based on the foregoing, diversity exists between Plaintiff and Defendant. *See* 28 U.S.C. §§ 1332(d)(2)(A) and 1453.

**B.     Plaintiff's Proposed Class Contains More Than 100 Members**

22. The CAFA requirement of 100 or more putative class members is met. *See* 28 U.S.C. § 1332(d)(5)(B).

23. Plaintiff alleges that Defendant employs "at least several thousand" non-managerial employees at its Maryland fulfillment centers. **Exhibit A1**, Complaint, ¶ 20. Plaintiff purports to assert claims on behalf of a putative class of all "current and former non-managerial warehouse employees who were employed by Amazon at any and all of Amazon's Maryland warehouse facilities during the applicable statutory time periods." **Exhibit A1**, Complaint, ¶¶ 3, 18.

24. Based on a preliminary review of relevant business records, Defendant believes that from December 2, 2018 through March 1, 2020,[3] it employed more than 6,000 non-exempt hourly employees[4] at its fulfillment center located on 2010 Broening Highway, Baltimore, MD 21224 where Plaintiff previously was employed. *See* **Exhibit D**, Declaration of Kimberley Richardson, ¶ 4.

25. Accordingly, CAFA's requirement of 100 or more putative class members is easily satisfied in this case.

### C.   The Amount in Controversy Exceeds $5,000,000.00

26. CAFA authorizes the removal of class actions in which the amount in controversy for all class members exceeds $5,000,000.00. *See* 28 U.S.C. § 1332(d).

---

[3] Plaintiff alleges the mandatory security screening took place until "at least spring of 2020." **Exhibit A1**, Complaint, ¶¶ 2, 15. The Court may take judicial notice of the fact that although the actual date of the start of spring slightly varies from year to year, spring in 2020 commenced on March 19, 2020. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see* Fed. R. Evid. 201(b) (stating, in relevant part, that a "court may judicially notice a fact that is not subject to reasonable dispute because it" "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). To demonstrate that this case readily meets the requirements for jurisdiction under CAFA, Defendant conducts the relevant calculations to determine the amount in controversy by conservatively interpreting that spring 2020 commenced on March 1, 2020 (yielding a more limited relevant statutory time period, which equates to fewer potential class members).

[4] This figure does not include any non-exempt, hourly employees who were employed by Defendant at any other fulfillment centers in Maryland as Plaintiff implicates in the Complaint. **Exhibit A1**, Complaint, ¶¶ 11, 12, 20.

27. The removal statute requires a defendant seeking to remove a case to federal court to file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

28. The United States Supreme Court recognized that "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "[T]he defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 553.

29. Congress has stated that "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." *See* S. REP. 109-14, at 42-43 (2005) ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly[.]").

30. Although the Complaint does not identify a specific amount of alleged damages, it seeks "all available relief" under the Maryland Wage and Hour Law, the Maryland Wage Payment and Collections Law, and the Maryland doctrine of unjust enrichment. **Exhibit A1**, Complaint, p. 1. Set forth below, Plaintiff's allegations alone are enough to show that the amount in controversy at issue far exceeds the jurisdictional minimum of $5,000,000.[5]

31. Courts have noted that, at this stage and for the purposes of assessing whether the $5,000,000 amount in controversy has been met, it is reasonable to calculate class damages by

---

[5] Defendant disputes, and reserves the right to contest, that any amount is owed either to Plaintiff or to the putative class members that she seeks to represent. However, Plaintiff's allegations in the Complaint satisfy the amount in controversy requirement for the purpose of removal under CAFA.

extrapolating from the named plaintiff's assumed damages. *See Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 962 (S.D.N.Y. 2014) (calculating the amount in controversy for CAFA jurisdiction by calculating named-plaintiff's damages, and then extrapolating this information to yield aggregate class damages); *Manson v. GMAC Mortg., LLC*, 602 F.Supp.2d 289, 294 (D. Mass. 2009) (multiplying the class size by named-plaintiff's estimated damages to calculate amount in controversy); *see Wexler v. United Air Lines, Inc.*, 496 F.Supp.2d 150, 155 (D.D.C. 2007) (explaining that to determine the CAFA amount in controversy, "the average class member's claim is multiplied by the number of class members"). Indeed, the Fourth Circuit has noted that "in many removal cases, a defendant's allegations rely to some extent on reasonable estimates, inferences, and deductions." *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017). The Court further noted that "[t]he key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but 'an estimate of the amount that will be put at issue in the course of the litigation.'" *Id*. (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)). The Fourth Circuit has indicated that "[a] removing defendant can use <u>overinclusive</u> evidence to establish the amount in controversy so long as the evidence shows it is more likely than not that 'a fact finder <u>might</u> legally conclude that' damages will exceed the jurisdictional amount." *Id*. (emphasis added); *see also Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002); *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Here, Defendant, by taking an <u>underinclusive</u> approach, more than sufficiently demonstrates that the amount in controversy exceeds the $5,000,000.00 threshold required for jurisdiction under CAFA.

32. The Complaint alleges that as a result of requiring Plaintiff and the putative class of hourly, non-managerial warehouse employees to wait for and go through mandatory security

8

screening process after clocking out until at least the spring of 2020, Defendant failed to "compensate its employees [for] wages owed at both the regular rate of pay and overtime rate owed at time-and-a-half the regular rate under the MWHL and MWPCL." **Exhibit A1**, Complaint, ¶ 28.

33.     Plaintiff contends Defendant violated Maryland law by not compensating Plaintiff and the putative class during an end-of-shift security screening process that Plaintiff alleges "took on average approximately fifteen minutes each day to complete." **Exhibit A1**, Complaint, ¶ 2.

34.     In total, Plaintiff claims that she, along with the putative class, is entitled to compensation for 15 minutes, and possibly more, of uncompensated time for every day they worked in a Maryland facility. Conservatively estimating a 3-day workweek, this would amount to at least 45 minutes per week per person.

35.     The Complaint also alleges Plaintiff and the putative class members are entitled to: (a) "wages owed at both the regular rate of pay and overtime rate owed at time-and-a-half the regular rate"; (b) "actual damages, interest, and statutory damages" under the MWPCL and the MWHL; (c) "treble damages… under § 3-507.2"; (d) "damages, restitution, and other relief for herself and the proposed class"; (e) "attorneys' fees, costs, and expenses incurred in prosecuting this action"; and (f) "such other and further relief as in law and justice they may be entitled to receive." **Exhibit A1**, Complaint, ¶¶ 3, 28, 30, pp. 8-10.

36.     For purposes of calculating Plaintiff's alleged damages, Defendant's payroll and timekeeping records reflect she worked from June 21, 2017 to November 12, 2021. Within the class period between December 2, 2018 and spring of 2020 (when she alleges security screening ended), however, she worked only 24 workweeks, taking leave of absence for roughly one year between May 20, 2019 and May 12, 2020. For those 24 weeks of work in late 2018 and early 2019,

her rates of pay were $15.25 and $15.75 per hour. **Exhibit D**, Declaration of Kimberley Richardson, ¶ 3. Defendant relies on the lowest rate of $15.25 per hour for calculations herein, though Plaintiff earned higher hourly rates later in her employment after returning from leave of absence, up to $20.65 per hour by the time she terminated employment in November 2021.

37. The Complaint alleges that Defendant's "failure to properly compensate its employees includes wages owed at both the regular rate of pay and overtime rate owed at time-and-a-half the regular rate under the MWHL, and are in contravention of the MWPCL." **Exhibit A1,** Complaint, ¶ 28.

38. While Defendant disputes that Plaintiff or the purported class are due any wages, the average of the alleged regular rate or straight time damages sought by Plaintiff herself is computed as follows:

- ($15.25 lowest hourly wage) x (.75 hours [15 min x conservative 3 days a week = 45 min.]) of alleged weekly off-the-clock work) x (24 workweeks) = **$274.50**
- Presumed damages of Plaintiff**: $274.50**
- Presumed damages of Plaintiff (**$274.50**) x **6,000** potential putative class members = **$1,647,000.00**
- Plaintiff seeks treble damages: (**$1,647,000.00**) x (3) = **$4,941,000.00**

39. Defendant also disputes Plaintiff's overtime claim, but for purposes of computing the amount in controversy, if we halve the **$1,647,000.00** regular rate/straight time damages computed above to conservatively assume that only half of the putative class worked 40 or more hours per week such that they would have earned overtime, and then halve it again, given that overtime would be paid at an additional half-time premium, the overtime damages are estimated

at another **$411,750.00**. Because Plaintiff seeks treble damages (Complaint, ¶ 30), she seeks triple this amount, yielding the sum of **$1,235,250.00**.

40. Plaintiff also seeks recovery of attorneys' fees. **Exhibit A1**, Complaint, pp. 8-10. The Maryland Wage and Hour Law and the Maryland Wage Payment and Collections Law allow for recovery of attorneys' fees. *See* Md. Code, Lab. & Empl. § 3-507.2(b). Accordingly, attorneys' fees must be included in determining the amount in controversy. *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013); *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983); *Rojas-Roberts v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 1 121 10, at *7 (D. Md. Aug. 25, 2015) ("Attorney's fees, as opposed to interests and costs, may be included in determining the jurisdictional amount in controversy.").

41. In determining the amount in controversy for purposes of removal, attorneys' fees in the amount of 25% is conservative. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3rd Cir. 2005), *as amended* (Feb. 25, 2005) (noting study done by the Federal Judicial Center that found a median percentage recovery range of 27–30% for all class actions resolved or settled over a four-year period); *see Frederico v. Home Depot, Inc.*, 507 F.3d 188, 199 (3rd Cir. 2007) (considering attorneys' fees of 30% when calculating amount in controversy)). When considering attorneys' fees, the Court is not limited to the fees accrued at the time of removal. Rather, "courts may consider future attorneys' fees in determining whether the jurisdictional limit has been met." *Williams v. Bank of N.Y. Mellon*, 2013 U.S. Dist. LEXIS 77364, at *7 (D. Md. June 3, 2013) (citing *Francis v. Allstate Ins. Co.*, 869 F. Supp. 2d 663, 670 (D. Md. 2012), *aff'd*, 709 F.3d 362 (4th Ci. 2013).

42. Here, 25% of the treble damages sought in relation to the straight time pay (**$4,941,000.00**) and overtime pay (**$1,235,250.00**) would yield potential attorneys' fees in the

amount of approximately **$1,544,062.50**. This adds to the amount in controversy for this case and, with the numbers above yields a total of **$7,720,312.50** (**$4,941,000.00** + **$1,235,250.00** + **$1,544,062.50** = **$7,720,312.50**), well above the $5,000,000 threshold.

## V.      ALL REMAINING PREREQUISITES FOR REMOVAL ARE SATISFIED

43.   Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. §§ 86, 1391, 1441, and 1446 because the Circuit Court for Baltimore City, Maryland where Plaintiff filed the Complaint is a state court within this federal district and division.

44.   Defendant is a private business entity, not a State, State official, or other governmental entity exempt from CAFA. 28 U.S.C. § 1332(d)(5). *See* **Exhibit C**, Declaration of Zane Brown, ¶ 3.

45.   The local controversy exception under CAFA does not apply, as Defendant is not a citizen of the State of Maryland. *See* 28 U.S.C. § 1332(d)(4)(A).

46.   As the sole Defendant, the requirement is satisfied that all defendants consent to the removal of the action, pursuant to 28 U.S.C. § 1446(b)(2)(A).

47.   Promptly after the filing of this Notice of Removal, Defendant will give written notice of the filing to Plaintiff's counsel and will file a copy of the Notice of Removal with the clerk of the Circuit Court for Baltimore City, Maryland in accordance with 28 U.S.C. § 1446(d).

48.   A completed Federal Civil Cover Sheet accompanies this Notice of Removal.

49.   If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present both briefing and oral argument in support of its position that the case is properly removable.

**WHEREFORE**, for the reasons set forth above, Defendant respectfully requests that all further proceedings in the Circuit Court for Baltimore City, Maryland be discontinued and that this action be removed to the United States District Court for the District of Maryland.

Dated: March 2, 2022                                      Respectfully submitted,

                                                      */s/ Joshua B. Waxman*
                                                    Joshua B. Waxman, Bar No. 17990
                                                    jwaxman@littler.com
                                                    S. Libby Henninger, Bar No. 17389
                                                    lhenninger@littler.com
                                                    LITTLER MENDELSON, P.C.
                                                    815 Connecticut Avenue NW
                                                    Suite 400
                                                    Washington, DC  20006.4046
                                                    Telephone:   202.842.3400
                                                    Facsimile:    202.842.0011

                                                    Joon Hwang , Bar No. 21536
                                                    jhwang@littler.com
                                                    LITTLER MENDELSON, P.C.
                                                    1650 Tysons Boulevard
                                                    Suite 700
                                                    Tysons Corner, VA  22102
                                                    Telephone:   703.442.8425
                                                    Facsimile:    703.373.2628

                                                    *Attorneys for Defendant*
                                                    *AMAZON.COM SERVICES LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March, 2022, the foregoing **DEFENDANT'S NOTICE OF REMOVAL** was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing, and served by U.S. Mail on the following counsel of record:

> Brian J. Markovitz
> Joseph, Greenwald & Laake, P.A.
> 6404 Ivy Lane, Suite 400
> Greenbelt, Maryland 20770
> bmarkovitz@jgllaw.com
>
> *Attorney for Plaintiff*
>
>
> */s/ Joshua B. Waxman*
> *Attorney for Defendant*

4867-3435-9815.5 / 096748-1005